IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

LINDA D. FREY,                                 Case No.: 6:16-CV-01324-AC

          Plaintiff,                             OPINION AND ORDER

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                 Defendant.

ACOSTA, Magistrate Judge:

Linda Frey ("plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her applications for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI") under the Social Security Act ("Act"). All parties have consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance with Federal Rule of Civil Procedure. 73 and 28 U.S.C. § 636(c). Based on a careful review of the record, the Commissioner's decision is affirmed.

Page 1 - OPINION AND ORDER

*Procedural Background*

On November 29, 2012, plaintiff applied for DIB and SSI. (Tr. 196-98, 199-204.) In both applications plaintiff alleges disability as of January 15, 2011. (Tr. 196, 199.) The Commissioner denied her applications initially and upon reconsideration. (Tr. 92-100, 101-09, 112-22, 123-33.) On October 10, 2013, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and an administrative hearing was held on October 21, 2014. (Tr. 51-89, 154-55.) After the hearing, the ALJ issued an unfavorable decision on December 31, 2014, finding plaintiff not disabled. (Tr. 23-44.) The Appeals Council denied plaintiff's subsequent request for review, making the ALJ's decision final. (Tr. 1-6.) This appeal followed. Plaintiff argues that the ALJ erred by: (1) improperly rejecting the medical opinion evidence of Dr. Daniel Paulson; (2) failing to provide a clear and convincing reason to reject her subjective symptom testimony; and (3) failing to support the step five finding with substantial evidence. (Pl.'s Opening Br. 8-19.)

***Factual Background***

Born on May 6, 1964, plaintiff was forty-six years old on the alleged onset date of disability and fifty years old at the time of the hearing. (Tr. 196, 199.) She completed some high school and has past work as a fast food worker. (Tr. 56-57, 69-70.) Plaintiff alleges disability due to strokes, heart problems, heart attacks, bursae sac problems, and asthma. (Tr. 92, 101, 112, 123.) Her date last insured for Title II benefits was December 31, 2009. (Tr. 226.)

***Standard of Review***

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a medically determinable, severe impairment, he is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*,

482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work existing in significant numbers in the national or local economy. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(g), 416.920(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

### *The ALJ's Findings*

At step one of the five-step process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity since January 5, 2011, the alleged onset date. (Tr. 28.) At step two, the ALJ determined that plaintiff had the following severe impairments: congenital clubfoot, status post surgical repair with atrophy and smaller foot, Achilles tendinitis left foot, coronary artery disease, chronic obstructive pulmonary disorder (COPD), and depression. (Tr. 28-29.) At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (Tr. 29-30.)

The ALJ next assessed plaintiff's residual functional capacity (RFC) and found that plaintiff has the RFC to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). She can lift and/or carry 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk for a total of four hours and sit for a total of six hours in an eight-hour workday

Page 4 - OPINION AND ORDER

with normal breaks. The claimant is limited to no foot control operation with the left lower extremity. She is limited to no more than occasional push or pull with the left extremities. The claimant is limited to no more than occasional climbing of ramps or stairs. She must never climb ladders, ropes, or scaffolds. The claimant is limited to no more than frequent balancing. The claimant must avoid concentrate (sic) exposure to irritants such as fumes, odors, dust, gases, and poorly ventilated areas. She must avoid concentrated exposure to unprotected heights. The claimant can understand and carry out simple instructions.

(Tr. 30-38.)

At step four, the ALJ found that plaintiff was not capable of performing any past relevant work. (Tr. 38.) At step five, the ALJ determined that based on plaintiff's age, education, work experience, and RFC there were jobs that existed in significant numbers in the national economy that plaintiff could perform, which included telephone solicitor, office helper, or cashier II. (Tr. 38-40.) The ALJ therefore concluded plaintiff was not disabled. (Tr. 40.)

***Discussion***

Plaintiff argues that the ALJ erred by: (1) improperly rejecting the medical opinion evidence of Dr. Daniel Paulson; (2) failing to provide a clear and convincing reason to reject her subjective symptom testimony; and (3) failing to support the step five finding with substantial evidence. (Pl.'s Opening Br. 8-19.)

I. Medical Opinion of Treating Physician, Dr. Daniel Paulson.

First, plaintiff argues that the ALJ improperly rejected the medical opinion of Dr. Daniel Paulson. (Pl.'s Opening Br. 8-13.) Specifically, plaintiff contends that the ALJ erred by giving Dr. Paulson's medical opinion "little weight," arguing that the ALJ was required to further develop the record if she "believed Dr. Paulson's opinions were not supported by sufficient objective findings." (Pl.'s Opening Br. 9.)

The ALJ has an independent duty to fully and fairly develop the record, whether or not the claimant is represented by counsel. *Smolen v. Chater*, 80 F.3d 1273, 1287 (9th Cir. 1996). However, the duty to further develop the record is triggered only when "there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001); *see also McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2010).

Plaintiff had numerous appointments with Dr. Paulson in 2013 and 2014, but the medical opinion at issue is from a May 29, 2013 report. (*See* Tr. 283-88, 357-59, 362-67.) On May 29, 2013, Dr. Paulson wrote that plaintiff complained of "significant limitations" in her activities "secondary to her poor health," and "chronic foot pain bilaterally which limits her standing and walking time." (Tr. 283.) Upon examination, Dr. Paulson noted that plaintiff "appears tired," and that she "rises slowly and moves cautiously, gait steady, no tremors." (Tr. 284.) He assessed plaintiff with COPD; tobacco use disorder; depression, recurrent; and benign hypertension. (*Id.*) For her COPD, Dr. Paulson recommended plaintiff continue Albuterol and encouraged smoking cessation. (Tr. 285.) Dr. Paulson also wrote that plaintiff continue Mirtazapine for her depression, which she had a "good response" to, and continue aspirin and carvedilol for her hypertension, noting that it was "[w]ell controlled today." (*Id.*)

Here, the ALJ gave Dr. Paulson's medical opinion "little weight" because Dr. Paulson's opinion gave "minimal detail, making his opinion of less value." (Tr. 36.) Additionally, the ALJ found that "Dr. Paulson had only seen the claimant once prior" and "he appeared to be relying heavily on the claimant's subjective complaints," which the ALJ reasonably found were "not entirely credible," as further discussed below. (*Id.*)

Plaintiff argues that the ALJ was required to "conduct an appropriate inquiry" if "the ALJ believed Dr. Paulson's opinions were not supported by sufficient objective findings," arguing that her "poverty has prevented her from getting extensive medical treatment," and no other functional assessments from a treating doctor exist. (Pl.'s Opening Br. 9-10). This court disagrees. An ALJ's duty to develop the record is triggered only where "there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *See Mayes*, 276 F.3d at 460. Here, the record was neither ambiguous nor inadequate for the ALJ to make a finding on whether plaintiff was disabled. The ALJ reasonably evaluated the medical evidence of record with respect to plaintiff's physical and mental treatment records when making the disability determination and was not required to further develop the record.

Additionally, although plaintiff disagrees with the ALJ's interpretation of the medical record, the ALJ provided a specific and legitimate reason to reject Dr. Paulson's medical opinion. Here, the ALJ found Dr. Paulson's opinion gave minimal details and was based heavily on plaintiff's subjective symptom complaints, which the ALJ reasonably rejected, as further discussed below. *See Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) (a specific and legitimate reason for rejecting a treating physician's opinion is that the opinion is premised on a claimant's subjective complaints, which the ALJ had properly discredited).[1] Overall, this court finds the ALJ was not required to further develop the record, and provided a specific and legitimate reason to discredit Dr. Paulson's medical opinion. There is no error.

---

[1] The ALJ was required to provide a specific and legitimate reason to discredit the medical opinion of Dr. Paulson because it was contradicted by the opinions of Dr. Sharon Meyers, Jacob Wendling, D.O., and Dr. Neal Berner. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (the contradicted opinion of a treating or examining physician can be rejected with specific and legitimate reasons that are supported by substantial evidence.)

Page 7 - OPINION AND ORDER

II. Plaintiff's Symptom Testimony.

Next, plaintiff argues the ALJ failed to provide a clear and convincing reason to reject her symptom testimony. (Pl.'s Opening Br. 13-17.)

If "there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281, 1283-84 (9th Cir. 1996)). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

Examples of clear and convincing reasons include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies either in the claimant's testimony or between his testimony and his conduct, daily activities inconsistent with the alleged symptoms, a sparse work history, testimony that is vague or less than candid, and testimony from physicians and third parties about the nature, severity and effect of the reported symptoms. *Tommasetti*, 533 F.3d at 1040; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007); *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ found plaintiff's statements concerning the "intensity, persistence and limiting effects" of her symptoms were "not entirely credible" because: (1) there was a lack of medical evidence supporting plaintiff's subjective symptom complaints; (2) plaintiff failed to follow

recommended treatment despite complaints of severe medical impairments; and (3) her activities of daily living were inconsistent with her subjective symptom testimony.

    *A.    Lack of objective medical evidence.*

First, the ALJ wrote that plaintiff was "not as limited as she has alleged," finding medical evidence supports a finding that she can perform light work within the assessed RFC. (Tr. 32.) The ALJ noted that despite plaintiff's complaints of limitations associated with her coronary artery disease, medical records showed normal echo testing in 2011, normal cardiovascular testing in November 2012, and that her physicians encouraged her to walk more to improve her heart health. (*Id.*, citing Tr. 261, 280, 294-300, 302-16.)

Next, the ALJ noted that plaintiff's complaints of shortness of breath were "inconsistent with clinical observations." (Tr. 33.) Here, the ALJ found that plaintiff's COPD limitations "were not to the degree that she has alleged" noting that she alleged being able to walk only "20 yards before she experienced shortness of breath," and reported being short of breath during a November 19, 2012 stress test, but her "oxygen saturation remained in the mid-90s and she did not appear short of breath to medical personnel." (*Id.*, citing Tr. 283, 315.) Indeed, an independent review of the record supports the ALJ's findings.

Third, the ALJ noted that plaintiff complained of left Achilles tendon pain, yet medical records showed that her symptoms had resolved with treatment including bracing and ankle lifts, and upon examination she "had 4+/5 strength in her left lower extremity," and no "significant edema but there was thickening of the tendon." (Tr. 33, citing Tr. 263.)

With regard to her mental health treatment, the ALJ found that plaintiff received "minimal counseling" for depression, but "realized improvement regardless." (Tr. 34.) Plaintiff reported to

Page 9 - OPINION AND ORDER

Springfield Family Physicians that she had improvement with her depression, and was noted to have good eye contact, normal speech, normal thought process, and fair insight upon examination. (Tr. 284, 358.) "Although lack of medical evidence cannot form the sole basis for discrediting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). The ALJ reasonably determined the medical evidence did not support plaintiff's subjective symptom complaints. This was one of numerous clear and convincing reasons to discredit plaintiff's subjective symptom testimony.

     B.     *Failure to follow recommended treatment.*

Next, the ALJ found plaintiff's failure to follow treatment recommendations hurt plaintiff's credibility. (Tr. 34.) The ALJ noted that plaintiff declined the use of Chantix to help her stop smoking, despite recommendations by doctors that she quit smoking to alleviate her COPD. (Tr. 33, citing 291.) Additionally, the ALJ noted that plaintiff failed to see a podiatrist as recommended, which the ALJ found "indicates that her left foot difficulties are not as limiting as she has alleged." (Tr. 34.) *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (quoting *Tommasetti*, 533 F.3d at 1039)("unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" is a clear and convincing reason to reject a plaintiff's credibility.) This is a second clear and convincing reason to discredit plaintiff's subjective symptom testimony.

     C.     *Activities of daily living.*

Finally, the ALJ noted that both plaintiff's willingness to travel and her physical activities were consistent with a light level of work. (Tr. 34-35.) A plaintiff's activities of daily living can be used to discredit her credibility if the activities either: (1) contradict the plaintiff's other testimony, or (2) "meet the threshold for transferable work skills." *Orn v. Astrue*, 495 F.3d 625, 639

(9th Cir. 2007). The evidence cited by the ALJ does both.

First, the ALJ noted that on January 22, 2014, plaintiff reported "that she would be travelling [sic] for the 'next couple months'" and "expects to travel around the country for the foreseeable future." (Tr. 34, citing Tr. 357.) Plaintiff reported to medical personnel that she was stable on her medications, and was noted to "move freely with a steady gait." (*Id.*) The ALJ reasonably found this evidence was inconsistent with plaintiff's complaints of standing, walking, and breathing limitations.

Additionally, the ALJ noted that plaintiff's "physical activities are consistent with a light level of work," noting that she is able to prepare meals, make her bed, and helped with a household move in 2013. (Tr. 35.) The ALJ also noted that despite plaintiff's claims that she is "not good with people," she reported that she had "no problems getting along with family, neighbors, friends, or others" and was pleasant with medical personnel. (Tr. 35, 234.) Finally, the ALJ found that plaintiff was able to handle personal care, could follow written instructions, and could complete her activities of daily living, thus suggesting she could perform simple instructions. (Tr. 35, 229-36, 371-82.) *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (a claimant's activities can be used to reject a plaintiff's credibility "if a claimant engages in numerous daily activities involving skills that could be transferred to the workplace.")

In sum, the ALJ provided clear and convincing reason supported by substantial evidence for discrediting plaintiff's subjective symptom testimony concerning the severity of her symptoms. The court finds no error.

III.  ALJ's Step Five Findings.

Finally, plaintiff argues that the ALJ's step five finding is not supported by substantial

evidence. (Pl.'s Opening Br. 18-19.)

At step five, the burden of proof shifts to the Commissioner of Social Security to "identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [her] limitations." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g); 20 C.F.R. §§ 404.1566, 416.966. In so doing, the ALJ must consider the claimant's RFC as applied to the Dictionary of Occupational Titles ("DOT"), and the following "vocational factors:" age, education, and work experience. *Id.*

Plaintiff argues that the VE hypotheticals were incomplete because they did not include plaintiff's subjective symptom testimony or the medical opinion evidence of Dr. Paulson. (Pl.'s Opening Br. 18-19.) Typically, the ALJ propounds a hypothetical question to the VE that is based on medical assumptions supported by the record and reflects all of the claimant's limitations. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163 (9th Cir. 2001). Here, as discussed above, the ALJ reasonably discredited plaintiff's subjective symptom testimony and the medical opinion evidence of Dr. Paulson. As plaintiff raises no additional errors regarding the ALJ's assessment of her RFC, the court finds the hypothetical propounded to the VE incorporated all of plaintiff's limitations, and there is no error.

Next, plaintiff argues the ALJ failed to show there is other work existing in significant numbers in the national economy that she could perform based on her RFC, alleging that she is unable to perform the position of telephone solicitor and cashier II, and that the ALJ failed to address whether the occupation of office helper existed in significant numbers in the national economy. (Pl.'s Opening Br. 18.)

An individual shall be determined disabled for the purpose of Social Security disability if her

impairments are so severe that "[s]he is not only unable to do her previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Based on the VE testimony, the ALJ noted that plaintiff could perform the position of office helper, of which there were 150,000 jobs nationally, and 1,500 jobs in Oregon. (Tr. 39.) The ALJ found that all three of the positions identified by the VE, were "jobs existing in significant numbers in the national economy." (Tr. 40.) There is no "bright-line rule for what constitutes a 'significant number of jobs.'" *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012). However, the court finds that 150,000 jobs nationally and 1,500 jobs in Oregon is a significant number existing in the national economy based on the findings in other cases. *See Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002) (1,300 jobs in Oregon was considered a "significant number"). Because the ALJ identified a job that existed in significant numbers in the national economy that plaintiff could perform with her RFC, the court need not address whether plaintiff was able to perform the positions of telephone solicitor and cashier II. The court finds no error at step five.

### *Conclusion*

For the reasons above, the Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 13th day of October, 2017.

JOHN V. ACOSTA
United States Magistrate Judge

Page 13 - OPINION AND ORDER